Today's cases will be called as previously announced and the times will be as allotted to counsel. The first case today is number 24-1049 United States v. Germaine Velez-Ramirez. At this time, would counsel for the appellant please come to the podium and introduce herself on the record to begin. Thank you. May it please the court, my name is Tina Schneider. I'm here on behalf of Mr. Velez. Good morning. With the court's permission, I'd like to reserve two minutes for rebuttal. You may. Thank you. I'll start out with the first issue here, which is valuation of the subject matter of the bribe. Under 18 U.S.C. 666, the government program's bribery statute, the value of the subject matter of the bribe has to be $5,000 or more. Here, viewing the evidence in the light most favorable to the government, the deal was that Ms. Orocho, who was arrested by my client for possession of a joint, would have sex with him in exchange for the promise that the criminal case would go away. The subject matter of the bribe, therefore, was ensuring that Ms. Orocho had no conviction on her record. She testified that she would need a license in order to become a nurse and couldn't get a license if she had that conviction on her record. The government sought to prove value by presenting evidence of Ms. Orocho's legal fees. What about the fact you just talked about? So that seems to have value. She's trying to get a job that will presumably pay quite a bit as a nurse, and she's not going to be able to or have more difficulty getting that job. How do we, putting aside the lawyer for a second, because I was actually more interested in this part, how do we quantify that, or does the jury get to quantify that as long as they're properly instructed? There needs to be evidence of that. When you say of that, what is of that? The difference that you pointed out between what she might earn as a nurse and what she was earning as a home health care aide. So this court in Acevedo, that was a case where part of the subject matter of the bribe was the promise of an appellate judgeship. And this court found that where there was testimony on record, that there was a $15,000 annual difference in salary, that was sufficient to meet the transactional element, the $5,000 requirement. Here there was no evidence of what that difference would have been. But counsel, there are different ways to prove the value of the transactional element. Judge Afram's question is explored one way, but even if there is not evidence in the record addressing that particular method, there was other evidence in the record that would address that issue. For example, her own testimony about how much it would be worth to her to have this charge go away, how much, in fact, she spent in an effort to have the charge go away. Those are also legitimate methods of proof, are they not? No, I disagree. So valuation never means the value, the kind of idiosyncratic or emotional value to the briber of the subject matter of the bribe. There is no case where the jury relies solely or the court relies solely on what it might mean emotionally to a briber to get the thing that was. The baseline test, though, right, is how much would someone in the market be willing to pay? That's the fundamental question. So then it's at least probative when it would be a subject evaluation, and then you can also look to other objective pieces of information, such as the amounts paid to an attorney. So why is it irrelevant that she might value it as about $10,000? Okay. So what she paid her lawyer, which is how the government tried to value this, would have been unknown to her at the time she made the deal. Why does that matter, though? Because there are too many – it's too – why does it matter that she knew it at the time? This seems more like a jurisdictional kind of hook. It has nothing to do with the mens rea of the crime. So why do we care that she had any understanding of what the lawyer would cost? It did cost. Well, maybe it did or didn't. Assume it did. Assume it did. Why would it matter? Because the crime is committed at the time of the bribe, right, at the time the deal is struck. The bribe is not a continuing crime like conspiracy. It happens, and we have to be able to value it when it happens. Do you think the defendant needs to know the value when he makes the bribe? That's what market system is, is you pay what you think something is worth. And here she had no knowledge, and when we think about legal fees, which is how the government tried to prove it here, there are so many variables. Would she be eligible for a public defender? Which, in fact, she was here and fired that person. The fee structure of whatever lawyer she hired, whether the case was resolved quickly or not, when the government chose to prosecute the defendant for bribery. And that's interesting here because, in fact, the government charged my client. He was indicted. And then she had some more hearings in her criminal case, and the government added those hearings to the total. Counsel, let me understand. You're arguing that the value has to be established at the moment of the transaction? Any evidence that would go to that value issue, subsequent to the transaction, is irrelevant? Is that the rule you're asking us to adopt? Yes. But that doesn't mean that future acts. So, for instance, in Acevedo, the person who accepted the bribe, the judge, the prospect of getting this increase in salary, that was a future event. But we can look at it because it's something concrete. Here, there's no way of knowing. Why wouldn't it just be the risk that the defendant takes? I mean, whether this is above $5,000 or below $5,000, I'm sure you agree with me, it's bad to solicit bribes, correct? I do agree with you. And so the $5,000 goes only to whether there's a federal forum for this or a local forum for this. And so why would we care whether he knew? I mean, the mens rea does not extend, does it, to the $5,000. Well, it's not about what he knew, what my client knew. It is what the value of the bribe was. And so we're looking at what Ms. Orocho, at the time she struck the bargain, what that was worth. Well, she says $10,000, so we don't know what it's worth. I mean, it can't be known. It's not knowable unless you value this. What's knowable is the scarlet letter that comes with the conviction. That's the $10,000. You say, don't count that. Okay, but the other costs are unknown, right? I am saying you could have counted that, the scarlet letter, if I can continue, if the government had presented evidence of that, had presented some evidence that here's what she was earning and here's what she would have earned. But, again, you're suggesting there is only one way.  Well, that seems to be what you keep harping on, that particular lack of evidence. Well, here in the kind of universe of bribes, there are many ways to value it. In a lot of cases, money is given, so that's how the value is set there. Here it's an unusual case because there are intangibles on both sides. We're not trying to value the sex. We're trying to value the promise to drop the case. What I'm saying is you cannot value that in hindsight. You cannot value that looking back several years later to say, here's what she paid for her lawyer, so here's what that was worth. It has to be at the time, it has to be concrete, and the government presented no evidence except for this, here's what she paid for her lawyer. Thank you. Thank you. Thank you, Counsel. At this time, would Counsel for the Government please come to the podium and introduce herself on the record to begin. Good morning, Your Honors, and may it please the Court. My name is Marie-Christine Ami and I am representing the United States. We ask this Court to affirm Mr. Villes' conviction. The jury heard overwhelming evidence that the defendant, a police officer, requested and accepted sex in exchange for using his official position to influence a criminal case. And the conviction should be affirmed for two independent reasons. First, the evidence easily satisfied the $5,000 transactional threshold under Section 666. And second, the unobjected two rebuttal remarks were proper or at a minimum nowhere close to plain error. Unless the Court prefers otherwise, I'll begin with the sufficiency argument. This Court's review is a de novo review but highly differential. Here the question is not whether another interpretation is possible but whether any rational jury could find the element satisfied. And here the answer is clearly yes. The statute does not require the bribe itself to be worth more than $5,000. It requires that the transaction or benefit sought be worth more than $5,000. Can I jump in and ask you, do you agree that there is no evidence as to the value of the nursing degree? As to the degree itself, the evidence showed that clearly the jury could infer that it would be worth more than $5,000 in time. Based on what evidence presented? If we take into consideration, for example, the fact that Ms. Arrocho testified about her assistant nurse job that she was holding at the time of the events, where she testified she worked approximately 20 to 30 hours a week at a rate of $8 per hour. And that was a part-time job because she was attending nursing school and she was also caring for her 2-year-old daughter as a single mother. One could infer that if she had gotten, obviously, that nursing license, she would have eventually obtained a job as a full-time employee in the field and she would have easily made more money. But did anyone say that? I mean, you can't. I mean, I understand there's a certain common sense to that, but that's putting like our basic understanding of what her life plans are. I mean, was there any evidence about what her life plans were? The evidence showed, and her testimony was, that she was working very hard to obtain that nursing license. And she did so at the beginning when she was referencing or discussing who she was, a single mother of a 2-year-old working part-time as well as going into nursing. And she testified how important it was for her to obtain that nursing license. That's primarily the reason why she felt so compelled to approach Mr. Velez, first request that he did not go forward with the charges, and then eventually she took on the bribe itself. And so, therefore, first, there are two independent violation paths that the court can consider, and either is enough to satisfy that threshold. As first discussed, the jury heard about Arocho's out-of-pocket costs, which were objective and concrete. There was testimony that she paid $400 per court appearance, her or the times that she went to court. Do we know how many times that she did go to court? Well, the testimony was from, if we take her testimony together with the state prosecutor's testimony, she testified that she went on multiple occasions to court for close to a year. She said that it lasted a long time and that she had to go many times to court, and she missed work in those occasions. The state prosecutor testified that after the first preliminary hearing, which was the hearing where she was appointed counsel by the court, after that first court preliminary hearing, she went on 17 other occasions to court. She who? Ms. Arocho. And did the lawyer go? Even though it was the testimony that she paid the attorney for all the times that she had to go to court. That was the framework of the testimony. Whether he went or not? Whether he went or not, the testimony was that she had to pay $400 for each of the court hearings she had to go to court. Whether he went or not, which was not something that was necessarily overdeveloped during the testimony, the evidence the jury heard was that she paid $400 for each of the court hearings she had to appear. And the testimony was that there were 17 court hearings after that first preliminary hearing. Therefore, we take that into consideration together with the $1,000 fine she had to pay at sentencing after she pled guilty to the misdemeanor. Then she also paid $100 in a bond at the initial stage of the case. And then she testified that she paid an additional $400 to the attorney for his work to get her record expunged. So that totals over $8,300 that she paid in out-of-pocket costs, or basically out-of-pocket money. And that is the money that she would have saved, that she would have avoided having to pay if the bribe had worked. And that alone clears the statutory threshold. But separately and independently, the jury heard of the intangible value of the bribe. And that was also not speculative, because she, Ms. Arrocho, testified how much she valued avoiding jail time, avoiding a criminal record, and preserving the possibility of achieving that certified nursing diploma or degree. She testified that she would have paid well over $5,000. She said up to $10,000. And she even went on to say that she would have paid over $100,000. And she, and this was something for the jury to consider as to her credibility. She said at the time, I wouldn't have had the $100,000 to pay, but if I had had the money, I would have paid it. But what's the limiting principle on that argument? I mean, anyone can say anything. What if it's something that doesn't really seem to be worth that much, but I just say, yeah, I'd pay for that, that much for something. I mean, it doesn't, that seems like a thin, the thinnest of the points is just she says it. The limiting principle, Your Honor, is the valuation, is that the valuation must be grounded in evidence. Tied through the transaction, not speculation. And here the jury had that evidence, because the jury heard how much it was valued to her based on what she was doing at the time, where she was working, what she was doing, what her goals were. And they actually were able, the jury, to assess credibility as to whether that valuation was not speculative. Because she continued to reinforce the fact that the transaction, the fact that she was trying to avoid a criminal record meant to her that much. That she really wanted to get that nursing license, that she was considering and did go as far as to offer sex as a bribe in order to avoid a criminal record. Counsel, before your time is up, I'd like to turn to the second issue, which we have not discussed at all. That's the claim that the prosecution in rebuttal commented on the decision of the defendant not to testify. I realize there was no objection to trial. We applied plain error. There's a prejudice issue. You, on that issue, you talk about the overwhelming evidence that was presented. Twelve witnesses, text messages, recorded calls, all of that. It seems to me that all of that evidence goes to his culpability for the crime. The sufficiency issue here relates to the amount, the value of the transaction, if you will. How much of all of that evidence that you cite actually goes to that issue, the value of the transaction? We're aware of her testimony on the issue. Is there anything besides that? The evidence is overwhelming on that issue because Ms. Araujo's testimony was substantial and it was specific as to how much she valued the transaction and how much she had spent on that transaction. And that is taken into consideration with the prosecutor's testimony with respect to the criminal proceeding. How long it took for this state criminal proceeding to take place, the amount of effort that it took, obviously the prosecution trying to prosecute Ms. Araujo despite of Mr. Velez's doings in trying to delay it or to get the case dismissed. Ms. Araujo's effort to pay for that attorney, Ms. Araujo's value for the transaction, and the fact that finally there was able to have, if I may continue, Your Honors, the prosecutor discussed how they achieved a guilty plea at that moment because of many things, including the fact that the drug field test had not turned up, in addition to the already known information that Mr. Velez had accepted sex as a bribe in this case. And considering that, and I would say the totality of the circumstances, because other people testified as Ms. Araujo's friends and other people who discussed who she was, the type of person she was at the time, and the jury could infer from all those testimonies who was Ms. Araujo and whether it was credible and not speculative that she would care that much for not having a criminal record and would value that transaction over $5,000. Your Honors, if the court would like, I would move on to the second issue. Well, you're out of time. Are there questions about the second issue? No. Okay. In that case, the government relies on its brief. Thank you. Thank you. Thank you, counsel. At this time, would counsel for the appellant please reintroduce herself on the record? She has a two-minute rebuttal. Tina Schneider for the defendant, Mr. Velez. Just a few things. There is not a single case where the briber's subjective evaluation of the value of the bribe was used to meet that transactional requirement. Let me ask you this. If we don't accept your it's at the time of the bribe point, do you lose because there's at least $6,800 in attorney's fees? No, I do not lose. And why is that? Because the bribe was not for I will sleep with you if you will hold me harmless for my attorney's fees. The bribe was not for her to be reimbursed for her process costs. The bribe was that there would be no conviction on the record. And as has been discussed before, the value of that was really the difference between her being able to become a nurse and her not being able to. Counsel, why isn't the amount of money that she actually spent on attorneys, on a fine, on getting the record expunged, why isn't all that money a solid, not subjective, a solid proxy for the value of the transaction? That's just not her. It would be worth it. This is actually money she was willing to put out. At the time of the transaction, she didn't know. Then you are asking for that. Then that's required to get where you want to go, that it has to be at the time of the transaction. We have to agree with you. Yes. Oh, you mean do I lose if you don't agree with me on that? I don't think I do because some of the hearings that they are relying on here, Ms. Orocho's sentencing hearing, her expungement, came after the defendant's indictment. So what they're saying is there's no end to this. She can keep, even after we charge him with the bribe, she can keep incurring expenses, and that will go against. When you're brought into the criminal justice process, you're going to take on costs. And those, I agree, are not concretely known, but that's going to happen. And the defendant did something bad, and so I'm not sure why we would just say, well, it doesn't matter. As you go forward, costs are going to happen, and if they're enough, they're enough. Why is that not the way to think about it? Well, a defendant is here before you because they've been convicted of doing something bad. But where one of the elements of the crime is not met, it doesn't matter if the defendant has done something bad. Well, Judge Aframe is not suggesting that just because he's bad, the jurisdictional element doesn't matter. Right, but it's like, where do we time it from? And it seems to me that there's an understanding there's going to be costs. I mean, you have to agree with that, right? I mean, there's going to be a criminal. Not if she had a public defender, which she qualified for. And if you accept that analysis, then a bribe is actionable under federal law if someone has money and is going to pay for their lawyer. But a bribe is not, the same exact bribe is not actionable if they get a free lawyer. That's crazy. And before, I see my time is up, but I'd just like to point out the $1,000 fine that they relied on, that was waived at sentencing. The $100 bond was returned to her at her sentencing. Fair enough. That's all I have. Okay, fair enough. Thank you. Thank you. Any council that concludes argument in this case?